# THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CROSS MEDIA WORKS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-10-401-D |
| RUSS REID, an Illinois corporation; STRATMARK, a Texas Limited Liability Partnership; and URMOBILE, a Texas Limited Liability corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## **ORDER**

Before the Court is the motion [Doc. No. 19] of Defendant Russ Reid ("Reid") to stay this action, pending the resolution of another lawsuit previously filed in this Court. Plaintiff Cross Media Works, Inc. ("Cross Media") timely objected to the motion, and Reid filed a reply.

I. Background:

In this action, Cross Media alleges that Reid and Stratmark tortiously interfered with a contract between Cross Media and Feed the Children ("FTC").[1] Cross Media alleges that it is a "multi-platform media firm" which provides media management services including, *inter alia*, advertising in all forms of media as well as direct mail; Reid and Stratmark are companies providing similar services. Complaint, ¶¶ 8, 10, 11. According to Cross Media, it executed a May 18, 2008 contract with FTC (the "FTC Contract") authorizing Cross Media to serve as FTC's exclusive agent

---

[1]In the Complaint, Plaintiff also asserted a tortious interference claim against URMobile; however, Plaintiff has dismissed URMobile. *See* Notice of Voluntary Dismissal [Doc. No. 10].

for all FTC advertising for a three-year period commencing on August 1, 2008. *Id.* ¶ 12.

Cross Media alleges that Reid and Stratmark intentionally interfered with the FTC Contract by subsequently seeking to provide advertising and related services for FTC. According to Cross Media, Reid contacted media outlets in August 2009 and announced that Reid would be purchasing advertising for FTC. Complaint, ¶ 21. Cross Media then notified Reid of the FTC Contract and Cross Media's claimed exclusive rights thereunder; Reid subsequently retracted its earlier communication with media outlets, and did not pursue advertising purchases for FTC. *Id.* at ¶¶ 22-23. However, Cross Media alleges that Reid, acting directly or through Stratmark, then initiated discussions with FTC in an attempt to become FTC's agent for the purchase of advertising and the provision of related media services, notwithstanding its knowledge of the FTC Contract and Cross Media's rights thereunder. Complaint, ¶¶ 26-27. Cross Media contends this conduct constitutes tortious interference with the FTC Contract.

Approximately one month before Cross Media filed this lawsuit, FTC filed an action in this Court, *Feed the Children, Inc. v. Cross MediaWorks, Inc.,* CIV-10-325-D, naming Cross Media as the sole defendant and seeking a declaratory judgment that the FTC Contract is invalid and unenforceable (the "FTC Lawsuit"). The FTC Lawsuit asks the Court to find the FTC Contract does not grant any enforceable rights to Cross Media; alternatively, FTC contends that Cross Media waived those rights. Cross Media filed a counterclaim in the FTC Lawsuit, alleging FTC breached the FTC Contract, and seeking a declaratory judgment that the FTC Contract is valid and enforceable for three years, commencing on August 1, 2008.

Reid now asks the Court to stay this action pending the resolution of the FTC Lawsuit.

Although it is not a party to that lawsuit, Reid argues that its resolution should precede the adjudication of this action because the FTC Lawsuit will determine whether the contract at issue is enforceable. Because a tortious interference claim requires the existence of a valid contract, Reid contends that, if the Court determines the FTC Contract is invalid, the claims asserted against Reid in this lawsuit will be moot. Thus, Reid argues the Court should not adjudicate the tortious interference claims until it first determines whether the FTC Contract is valid and enforceable.[2]

II. Standards governing a motion to stay:

"[T]he power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F. 3d 1222, 1227 (10th Cir. 2003) (quoting *Landis v. North Am. Co.*, 229 U.S. 248, 254 (1936)). The granting of a stay ordinarily lies within the discretion of the district court. *See Pet Milk Co. v. Ritter*, 323 F. 2d 586, 588 (10th Cir. 1963). "In assessing the propriety of a stay, a district court should consider: (1) whether the [movants] are likely to prevail in the related proceedings;[3] (2) whether, absent a stay, the [movants] will suffer irreparable harm; (3) whether the issuance of the stay will cause substantial harm to the other parties to the proceeding; and (4) the public interest at stake." *United Steelworkers*, 322 F. 3d at 1227 (citing *Battle v. Anderson*, 564 F. 2d 388, 397 (10th Cir. 1977)). Where a "'movant seeks relief that would delay court proceedings by other litigants, he must make a *strong*

---

[2] Reid also notes that Stratmark has filed an action in the United States District Court for the Northern District of Texas, *Stratmark, Ltd. v. Cross MediaWorks, Inc.,* No. 3:10-cv-00780-L (the "Texas Lawsuit"), and it seeks a declaratory judgment that the Contract is invalid. However, Reid does not ask the Court to stay this proceeding pending the outcome of the Texas Lawsuit.

[3] Because Reid is not a party to the related proceeding, the Court need not address this factor in determining the propriety of a stay.

3

*showing of necessity* because the relief would severely affect the rights of others.'" *Span-Eng Associates v. Weidner*, 771 F. 2d 464, 468 (10th Cir. 1985) (emphasis in original) (quoting *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgt, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)). When the movant seeks a stay of the case in which claims are asserted against him:

> "[T]he suppliant for a stay must make out a *clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in *rare* circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."

*Span-Eng*, 771 F. 2d at 468 (emphasis in original) (quoting *Chilcott*, 713 F.2d at 1484). "The right to proceed in court should not be denied except under the most extreme circumstances." *Chilcott*, 713 F. 2d at 1484.

Typically, whether a stay is proper arises when related cases are pending in two different forums. However, the Court's authority to grant a stay is not limited to such circumstances, as it has the inherent power to stay one proceeding when both cases are pending before it. *Landis*, 229 U.S. at 254. In *Landis*, the Supreme Court held the power to grant a stay is not limited to circumstances in which the same parties and issues are involved in actions in several forums, and specifically rejected the view that the parties in both cases must be the same and that the issues in the cases must be identical. *Id.*

In *Coseka Res. Ltd. v. Jordan*, 75 F.R.D. 694 (W.D. Okla. 1977), the district court applied *Landis* and granted a motion to stay when two related cases were pending before it. *See id.* at 695-96. Both cases involved some of the same parties and similar subject matter. *Id.* at 696. The defendant was the same in both cases and argued that the second action should be stayed pending

the resolution of the first action. *Id.* Both cases presented the same breach of contract issue, there was a risk of inconsistent decisions on the issue, and a finding in the first case in favor of the defendant could logically preclude a finding against the same defendant in the second case; therefore, the stay was granted. *Id.* The *Cacique* court concluded "that for purposes of economy of time and effort for the Court, for counsel and for litigants the instant action should be stayed pending the final outcome of [the other case] currently before this Court." *Id.* at 696 (citing *Landis*, 229 U.S. at 254).

III. Discussion:

As the party seeking a stay, Reid has the burden to make a clear showing of hardship and inequity if it is required to proceed and a strong showing of necessity in delaying this proceeding. *Span-Eng*, 771 F. 2d at 468. In determining whether Reid has met its burden, the Court must consider whether Reid will suffer harm without the stay, whether issuance of the stay will prejudice Cross Media, and the public interest in granting the stay, including judicial economy and the risk that the litigants' time and resources will be wasted with duplicative litigation. *See Pet Milk*, 323 F. 2d at 588.

Reid argues that Cross Media's tortious interference with contract claim hinges on the validity of the FTC Contract, the issue that will be determined in the FTC Lawsuit. The Court agrees. "Oklahoma law requires an enforceable contract as a predicate to a suit for tortious interference with contract." *First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1176 (10th Cir. 2005); *see also Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P. 2d 427, 428 (Okla. 1979) (listing the elements of a claim for tortious interference

5

with a contract under Oklahoma law). "'The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid enforceable contract.'" *First American,* 412 F. 3d at 1176 (quoting *Bailey v. Banister*, 200 F. 2d 683, 685 (10th Cir. 1952)).

Although the Tenth Circuit and Oklahoma federal courts have not addressed the precise issue raised by Reid, the United States District Court for the Southern District of New York has granted a motion to stay a tortious interference case where another lawsuit would determine the validity of the contract at issue. *Prosperity Partners, Inc. v. Woodbridge Fin. Corp.*, 2000 WL 420552 (S.D.N.Y. April 17, 2000) (unpublished opinion). In *Prosperity*, the first lawsuit was filed in state court and sought a declaratory judgment on the validity of a contract; the second action was filed in federal court and asserted an intentional interference with contract claim involving the same contract at issue in the state court lawsuit. The defendants in the second action asked the court to stay the proceedings pending the resolution of first case. *See id.* at *1. The *Prosperity* court considered the precise issue raised by Reid's motion: should the later-filed tortious interference with contract action be stayed pending the determination of a declaratory judgment action on the validity of the contract?

The *Prosperity* court found that the defendants described "exceptional circumstances" sufficient to stay the second action until the first action was resolved. *See Prosperity*, 2000 WL 420552, at *2. The court noted that "[a]ll of [the plaintiff's] claims hinge on the existence of a valid contract between [the parties to the first action]. . . . As [the plaintiff] admits, if [the] court [in the first action] finds that there was no contract, then [the plaintiff in this action] cannot make out a claim for tortious interference." *Id.* (citations omitted). The court concluded the stay was needed to

avoid the danger of wasteful, piecemeal litigation with contradictory results and because there was no prejudice to the plaintiff in the second action. *See id.*

The FTC Lawsuit and this proceeding are related, and the underlying issue of whether there was a valid and enforceable contract between FTC and Cross Media is present in both cases. Following the reasoning of *First American Kickapoo* and *Prosperity*, it is necessary to first determine whether there is a valid and enforceable contract between FTC and Cross Media before considering whether Reid tortiously interfered with that contract. Reid could not have tortiously interfered with the FTC Contract unless that contract is valid and enforceable. Accordingly, in this action, the validity and enforceability of the underlying contract must be determined as a threshold issue.

The Court concludes that, under these circumstances, Reid would be prejudiced if it is now required to proceed with defending the tortious interference claim under the circumstances present here. Absent a stay, Reid will be required to expend resources in defending the tortious interference claim and preparing for trial. If the earlier-filed FTC Lawsuit results in a determination that the FTC Contract is invalid, the resources expended by Reid will be wasted. On the other hand, Cross Media will not suffer prejudice if a stay is granted; if the FTC Contract is held invalid, Cross Media will not have an actionable tortious interference claim against Reid. If the FTC Contract is held to be valid and enforceable, then Cross Media will not be prejudiced by the delay in this action because a finding that the subject contract is valid will constitute proof of one of the essential elements – validity of the contract – of Cross Media's tortious interference claim.[4]

---

[4] While the Tenth Circuit has held that only in *rare* circumstances should a stay be granted if a litigant must stand aside while an issue is resolved that defines his rights, the dangers envisioned by the Circuit are not presented here because Cross Media is a party to the FTC Lawsuit and is directly involved in litigating the validity of the subject contract.

Furthermore, the Court finds that granting the requested stay will avoid the risk of duplicative discovery and litigation on the issue of the validity of the FTC Contract. That issue only needs to be litigated once; granting the stay of this litigation until the issue is resolved in the FTC Lawsuit will thus promote judicial economy as well as avoid duplicative efforts by the parties.

IV. Conclusion:

For the foregoing reasons, the motion [Doc. No. 19] to stay this action pending the resolution of the FTC Lawsuit is GRANTED. This case is stayed and will be administratively closed pending a judgment in the FTC Lawsuit or until further order of this Court.

IT IS SO ORDERED this 19th day of November, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE